Good morning everyone and welcome to the 9th circuit. We're so pleased to be here in person and have some of you here in person. Thank you for joining us. Judge Tallman and I also want to welcome Judge Corman who is sitting by designation from the Eastern District of New York. He sits with us often and is a wonderful judge and helps our court tremendously and we're so lucky to have him with us. Thank you, Judge Corman. You're quite welcome. We have a few cases submitted on the briefs today. Martinez v. Garland, 15-72614 is submitted. Bibiano v. Garland, 15-73128 is submitted. And then we have a case that's held in advance. And then we'll hear the other cases in the order in which they appear on the calendar. The first is Hidalgo v. Garland, set 15-72607. And I understand, Ms. Mackins, that it may be your first time in the court. Welcome. We're really happy to have you here. And you're welcome to come to the podium. And I can take off my mask? Yes, please do. Thank you so much. Good morning, Your Honors. Good morning. Good morning. May it please the Court, my name is Mackenzie Mackins, and I represent the petitioner, Ms. Brenda Maciel. I would like to reserve seven minutes of my time for rebuttal. The petition should be sustained for three reasons. First, the Court erred by ignoring relevant facts of the underlying crime and instead cherry-picked the record to erroneously deem the subject crime in this case to be particularly serious. Second, under the law, the Court erred in deeming the application untimely because it failed to consider the extraordinary circumstances of the petitioner, here a detained, indigent young woman who was the victim of multiple childhood rapes and domestic violence. And then lastly, Your Honors, the immigration judge failed to warn the petitioner of the requirement to provide corroborating evidence for relief under the Convention Against Torture. Because this case is so fact-specific, I'd like to briefly discuss Ms. Maciel's personal narrative. She's a native and citizen of Mexico. She left to the United States. Counsel, we read the briefs and we've studied the record. We'll save you some time. We've got a pretty good grasp of the facts. Okay, thank you. Let me just ask you with regard to the particularly serious crime determination, do we review that for clear error or substantial evidence? Are you asking us to redetermine the facts? Because I don't think we can do that on appeal. No, Your Honor. I believe it's a substantial evidence. And what we're asking the court is to remand the case for further fact-finding. And what would that further fact-finding include that was not otherwise available at the time of the original hearing? So, on two bases, Your Honor. First, after our briefing was submitted, we recently filed a 28-J letter. This court decided in Alcarez, Enriquez v. Garland, that when the immigration court or, excuse me, in Alcarez, Enriquez v. Garland, this court held that when an agency offers evidence to establish that a conviction constitutes a particularly serious crime, it must make a good faith effort to procure the witnesses and the author of the evidence. And does that announce a new rule? And does it apply retroactively? Our argument would be, or the petitioner's argument is, yes, it should apply retroactively here in this case. And the court should remand it so the government can be held to its burden to provide the authors of the police reports and any witnesses therein. So, I had trouble with that argument because it seemed like it wasn't new and it hadn't been raised before. Like, Alcarez is citing older cases that talked about this principle. So, how do we get around the idea that doesn't seem like you've made this argument before the 28-J letter? Your Honor, the petitioner was pro se in her immigration court proceedings and before the board. And we ask that the exhaustion requirements are leniently construed for pro se petitioners. And to the extent that she did try to offer new facts or to offer witnesses that were not appropriately considered before the immigration court and the BIA, we think that remand would be appropriate in this instance so that the court can fully flesh out these extenuating circumstances that should have been considered. The court made a cursory review of the French rescue factors when deciding that it was a particularly serious crime. In addition, we don't believe that we're not asking this court to reweigh those factors, but instead remand to allow the petitioner to present the witnesses that are required, that were presented in the police reports, as well as the police officers that were declared of the police reports. Counsel, if I take your argument to its logical conclusion, are we going to have to retry every prior state criminal conviction within the confines of a removal hearing before the agency? I can't think of any other situation where we ask the court to, in essence, look behind the fact of the conviction in order to reconsider whether or not the conviction should stand. And that's why I asked you about retroactivity, because it seems to me that our general rule is that it does not apply retroactively unless it announces a new rule of constitutional law that is retroactive. So what's the best case you have to support your position that we should apply it retroactively? Your Honor, I would like to address that, and I don't have the site with me, and maybe my co-counsel on rebuttal can address that issue. I would like to point the court, though, that the petitioner understands that great deference is given to the I.J. as the fact finder in these situations when evaluating, for example, in this case, particularly serious crime and francescue factors. However, when the I.J. cherry-picks or misconstrues the record, that's when we're asking this court to remand the case for the I.J. to fully flesh out a certain underlying circumstance. It seems like part of the problem, though, is that the I.J. Like, what you want the I.J. to have decided, as I understand it, is basically that she was acting in self-defense. She was not the instigator of this altercation. But she pled guilty. So if it was self-defense, she shouldn't have pled guilty. She shouldn't have been guilty at all. And that's where the tension for me is. I'm not sure how the I.J., even with more fact-finding, can get around the guilty plea. Or maybe no-love plea, but the conviction. She's not contesting, in essence, that the evidence that existed at the time against her had the matter gone to trial would have resulted in a finding of guilt. That's essentially what an Allen plea is. Right. And so that's not what we're asking the immigration court do or if this court were to remand. Instead, the francescue factor specifically lists the nature of the offense, the sentence imposed, and the underlying circumstances of the case. But you're asking us to order a remand so that the factual record can be augmented, so that new facts will be adduced that the I.J. should then consider in order to reconsider the prior decision, which, based on the record at the time, appears to me to be sufficient to establish substantial evidence to support the PSC determination. So the petitioner's contention is that the immigration judge did not fully flesh out and weigh the facts that were presented appropriately. For example, in the immigration judge's decision, he didn't mention when he did his analysis of the PSC crime that she was the only person hospitalized during this incident. The I.J. didn't mention that she was found unconscious on her bed. The I.J. didn't mention that. Out of the people that called the police, the anonymous callers, all of them mentioned that she was the one bleeding from her nose. But there was, unfortunately, some injury to both her brother and the boyfriend, which required at least a trip to the emergency room, maybe not hospitalization. And as Judge Friedland points out, when she entered her NOLO plea, those facts would be sufficient to support the 245A4 conviction. Yes, Your Honor, and I understand that. But our contention is that the conviction itself doesn't render her having a particularly serious crime. It is incumbent upon the court to investigate these underlying facts under matter of Francesco. But the court had before it, did it not, the Fontana Police reports of the domestic violence incident, which basically laid out the facts. I mean, you clearly could conclude that the boyfriend was the primary aggressor who started the fight. But she pled guilty rather than challenge the felony assault conviction. That is true, Your Honor. She did plead guilty to that offense. It was taken as a plea. Even with that, our argument is to have the case remanded based on the intervening case law, Alvarez Enriquez, which my co-counsel will address. Okay. If it's retroactive. Exactly. If it's retroactive. And then also, regarding the underlying facts, the judge in his decision, and the BIA summarily affirmed it, did not do a thorough analysis or a complete fact-finding analysis. So you're suggesting that the immigration judge basically would have to cite all of the evidence that was before the IJA in making that determination? No. So that we can be sure that he considered everything. No, but I think he should at least weigh the factors in his analysis, and he didn't do that. He cherry-picked to fit his holding that the petitioner had a particularly serious crime. You say cherry-picked, but if, as a matter of law, that evidence is sufficient to sustain a conviction for felony assault, I'm not sure what more the immigration judge had to do. He looked at the injuries that were sustained by the victims, made a finding that your client posed a danger to the community, and there is evidence in the record which would support that determination. I understand, Your Honor. What we're asking for is for it to be remanded for the government to produce the witnesses, which were her brother and her domestic partner, which were readily available, and then the Fontana Police. Well, how do we know that now? That's another concern I have with the argument. I mean, some of these convictions are decades old, and it's going to be very difficult. DHS has a hard enough time finding petitioners who have absconded from merits hearings, let alone witnesses to prior criminal cases who may or may not be around. I understand. The case at question just asks or requires the government or the producer of the evidence to make a good faith effort, and that is not in the record at all. So if DHS comes back and says, look, we searched Fontana and we can't find these people, does that solve the problem? Has she now received the due process to which she is entitled? It would depend on a case-by-case basis. I think here if they reached out to Fontana Police Department and had one author of over the nine incident reports appear, that could be sufficient. If they contacted the petitioner's family who was involved in the case, I would imagine that they could at least come to some resolution. But they should at least make a good faith effort. Okay. I know you wanted to save time for a follow-up. We've asked you a lot of questions. I have one more question about your letter about mediation. Sure. Could you explain what you think the path to some sort of status is or what your idea is of how this mediation would work? Sure. So alternatively, Ms. Maciel has a pending appeal to a U visa, and she was victimized multiple times, which is in the record. The reason why the U visa was denied is because of her criminal record, unfortunately. And so we were hoping to put it into mediation for the pending appeal to the U visa or to flesh out the new case. I thought that you talked about a relationship, though, and a possible marriage. Oh, I'm sorry. Yes. In addition to that, she has a long-term domestic partner who is a green card holder and has filed for naturalization, and that's pending. And so based on that, there could be some alternative route outside of the immigration court context. Has she moved to reopen based on changed circumstances? No, she's not lawfully married yet, so he's finishing his naturalization process. So she doesn't really have an avenue other than mediation in order to get this new fact considered. Right, exactly. And we'll ask government counsel, but has the government responded to your suggestion of mediation? I reached out to her. I think government counsel's position was that they would address it here in court today. Okay. We'll hear what they have to say. Okay. Thank you. Thank you. Congratulations on your first argument. Thank you. We'll hear from the government. Good morning, Your Honor. Since I'm appearing by video, am I coming through? You are. Thank you. Okay. Thank you very much. May it please the Court of the Excess Courts here in the Office of Immigration Litigation for the respondent. The first issue before the Court is whether Ms. Maciel was properly determined to be ineligible for asylum and withholding of removal because her conviction on two counts for the offense of assault by means of force likely to produce grave bodily injury is a particularly serious crime. Here the agency relied on the appropriate factors of proper evidence in making its determination that the conviction was a particularly serious crime. They did say that she was a danger to the community, but I know they did refer to that consideration. But as I look at the facts, there's no real evidence to support the notion that she's a danger to the community. In other words, that she's a person who would go out and injure anybody else. This is a dispute that occurred, an isolated dispute in a domestic, a single domestic fight in which she was not the aggressor. What evidence supports, what is the substantial evidence that supports the fact that she's a danger to the community or, in the words of one of our opinions, a good likelihood that her crimes could happen again? Well, Your Honor, even though the, I should say that the wording of the appraisal judge and the board are important there. Both this court and the board have acknowledged that danger to the community is tied to the finding of a particularly serious crime, so that when someone is bound to have a conviction determined to be a particularly serious crime under the first three factors, that it's somewhat presumed that there'd be a danger to the community. So, if a petitioner... And my testimony said the most important consideration is the danger to the community, and you're just reading it out. You're just saying because there's a finding that this constituted a serious crime, it automatically follows that she's a danger to the community. I don't see that. I wouldn't, if I were sentencing her, I wouldn't think of her as a danger to the community. So that's what troubles me, and I would hope that it would trouble you. Not necessarily, I know you're here as an advocate, but you're also representing an attorney general, and the United States is a sovereign. Do you really think that she should be deported? As this court acknowledged in Flores Vega, in a subsequent regulation, the board clarified that the final factor does not trigger an independent inquiry because non-citizens bound to have committed particularly serious crimes should be considered to constitute a danger to the community. The immigration judge here considered the first three factors, the nature of the conviction, the circumstances, the type of sentence imposed, in considering the danger to the community, but it's not an independent inquiry upon itself. So if we're going to know finding is necessary, all the IJ and the BIA have to find is that it's a serious crime, period? Well, based on the first three factors, the nature of the conviction, the circumstances, and underlying facts of the conviction and type of sentence. That's the definition of a serious crime. So the consideration about whether she's a danger to the community, that's kind of an automatic, that automatically follows. Well, I think that what the case law says is that it doesn't have to be an independent inquiry. And in this circumstances, they considered all of the circumstances and whether or not she would be a danger to the community. In this particular case, the immigration judge noted somewhat as it related to the first three factors that the two people who were injured were family members and that it was a violent crime and it was bodily injury. I understand that. I don't want to get into, God forbid, reviewing the facts, but one of the people who was injured was trying to break up the fight and she was not even intending to injure him. And the other was someone who was 20. She married him when she was 15. I think the evidence was on the spear that he had punched her in the nose, and that's what began what escalated later on in the apartment into this crime. But if I understand you correctly, you're just saying that we don't have to, you could read out for a matter of frontescue whether the type and circumstances of the crime indicate that the individual would be a danger to the community. That once you say that it was a serious crime, we don't get into that most important factor. What I'm saying is that the case law after frontescue has sort of modified the consideration of the danger to the community and how it's considered as part of the factors. If that's true, shouldn't there be a lot of weight on the circumstances element? And here, doesn't it really seem like she was acting in self-defense, at least to a large extent? Well, the immigration judge here looked at all three of the factors, the nature of the conviction, the circumstances underlying facts of conviction, type of sentence imposed. I think if you read the immigration judge's decision, he puts a lot of weight upon the nature of the conviction, that it is for, I'm sorry if the language is right, for assault by means of force likely to produce great bodily injury. And he goes through the testimony, but he also at the end sort of summarizes what's undisputed here, that there were two people that were very severely injured and that he's taking into account. That's not inconsistent with it being self-defense. I mean, we know it started by her getting punched by the boyfriend or husband or the partner and bleeding, and the neighbor called the police, right? I mean, that's how this started. Certainly, Your Honor, that the petitioner's testimony presented certain facts there, and I believe it's also reflected in the police reports about the circumstances that you mentioned. However, the immigration judge weighed the testimony in the police reports and the circumstances here and still found it was a particularly serious crime. So the immigration judge, if you look at the immigration judge's decision, the immigration judge goes through the statute, the conviction records, and the underlying circumstances, and then he still lands on the nature of the conviction. He still lands on the idea that ultimately this was an assault by means of force likely to produce great bodily injury, and that at least one thing that is undisputed was that there was a piece of broken glass used and that two people were very severely injured. As such, the immigration judge— There was an OLO plea, but, I mean, it wouldn't be inconsistent with going to trial with a self-defense defense to say I picked up a vase and had to use glass to protect myself, would it? I mean, is there anything about the fact that she used glass and they got injured that's logically inconsistent with self-defense? Your Honor, I don't want to second-guess the conviction here. I don't want to use the word self-defense because that is essentially— In this case, I would categorize what the petitioner was attempting to explain more as mitigating factors. An immigration judge did not weigh those mitigating factors in the same way that he weighed the other evidence in the record. You know, as Your Honor has previously pointed out during the petitioner's argument, a lot of what the petitioner alleged in her testimony was essentially going behind the conviction, was attempting to relitigate her conviction. She puts forth testimony that—I'm sorry, someone— I'm sorry, I didn't mean to interrupt you. Okay. So ultimately what the—I'm sorry, but ultimately what the immigration judge is doing here is weighing all of this evidence, the testimony, the pleas reports, the conviction record, the statute of convictions, and ultimately finding that it's a particularly serious crime, which is what the board affirmed. The board also looks at all of these factors and says this is a particularly serious crime. Counsel, recognizing that it was filed this week, do you have a response to Petitioner's 28-J letter? Does Alcárez-Enriquez mandate that we remand so that the agency can go out in the community and try and find the, I guess now former partner and the brother to have them come in and testify so that she can confront them? Your Honor, we believe that Alcárez-Enriquez is distinguishable here primarily because in that case, the evidence that was submitted in there, the probation report, was specifically objected to the petitioner as piercing, and the request that the DHS make the witness available for process examination was raised. Because that issue was raised, the court addresses it. In this particular case, however, the agency, that particular objection or any additional witnesses, there's no, unlike what the petitioner alleged, there's no evidence in the record that she attempted to introduce any other witnesses. Her grandmother testified, her aunt testified, and her mother, who is actually one of the declarants in the police report, actually testified as well. The brother who's possibly, her brother was not one of the witnesses that was called, but there was no objection here that there was any limitation to who she could call as witness. But the boyfriend wasn't, the boyfriend didn't testify either, did he? No, the boyfriend didn't testify. So how do we get around what I think is a Sixth Amendment confrontation analysis that underlies the panel decision in Alcárez-Enriquez? Go ahead. I'm sorry, Your Honor. Alcárez-Enriquez, I believe if you closely read it, they raise sort of three issues. And I think it's the third issue here that is what the petitioner originally argued in their opening brief and is actually the issue before the court. So in Alcárez-Enriquez, the first issue, of course, is the probation report and the production of this witness. And the way that the court reasons is that there is a question about the reliability of the probation report and a question about fundamental fairness because the petitioner requested the witness in that case. Here, the petitioner never objects to any of the first part of that, the reliability or the making available witness. But the second part of that is actually what I would posit is, or the government would posit, is before the court today. And that's actually the main die issue, which Alcárez-Enriquez declined to reach, which is the question of the weight of the evidence in the face of credible testimony. In Alcárez-Enriquez, the court declined to reach it, but I believe if the court looks at Ming Dai, this is the exact issue that was before the Supreme Court in Ming Dai, where the issue before the court was how does credible testimony balance with other evidence in the record. And the answer that Ming Dai gave to that was that, you know, is that credible testimony can't necessarily overcome the other factors, which is persuasiveness and verdict proof. And where the petitioner fails here is persuasiveness and verdict proof. So the issue isn't about witnesses. The issue is about whether or not the immigration judge properly looked at the evidence and weighed it and ultimately came to the determination of a particularly serious crime. Can I ask you about the letter requesting mediation? What is the government's position on whether mediation would be useful? Your Honor, I'm always, when petitioners approach me regarding mediation, I never want to necessarily cut it off completely, especially in this circumstance, because the petitioner's letter was somewhat scarce in details. They didn't submit anything about the I30, who her partner is, how long they've been together, anything. So it's very difficult to judge it simply on the merits. However, I would point out in this particular case, in my last 50 seconds, that unfortunately the petitioner's conviction here will likely be an enormous hurdle to the petitioner eventually getting adjustment status or any other type of relief, at least according to my research. And I'm not saying this to prejudice the court, but this specific conviction, 245A4, has been found to be an aggravated felony, a crime of violence. It's been suggested that it's a crime of moral turpitude. The likelihood is that she would face significant hurdles regarding that, regarding any type of relief in accordance with what she presents in her 28Js. So the government would likely decline mediation in this case. I'm sorry. I was going to say, because you just think it isn't going to likely end up in any kind of relief that she would be entitled to. I think in this circumstance, that is the reasoning that I would apply. That's just my initial reaction to this, but at the same time, you know, whether or not these requests are considered is very discretionary, so I wouldn't necessarily shut it down completely. But the petitioner just hasn't provided me enough information that I can consider. So at this point, it's a soft no. Yes. I'm sorry. Yeah. Can I go back and ask you one more question about this danger to the community aspect of front test skew? Were you saying that that aspect of it, most importantly, whether the type and circumstances of the crime indicate that the individual, be it the age of their community, has effectively been wiped off? I'm sorry, not that it's been wiped off, but the inquiry into it is different than it had been under front test skew. But there doesn't need to be an independent inquiry into the danger of it. Is there a difference between where the crime is specifically designated, for example, under California law, as a serious crime, rather than where there's no such designation? And does front end, front whatever, F, survive, where there's no specific reference or designation or characterization of the crime and the state law as a serious crime? You mean if it's per se a particularly serious crime? If the statute says this is a serious crime or in some way indicates that. Well, particularly a serious crime, as this court has recognized, is not defined in the statute. Oh, no, I'm not talking about the federal law, I'm talking about state law. I'm sorry. Is federal law, is it identified under state law? As a particularly serious crime. Your Honor, I'm afraid I can't answer that. I simply don't know. And just in case I'm not clear, is it defined as a particularly serious crime under federal law? In other words, is there a list in the statute or regs of crimes that are deemed, these crimes are particularly serious? Well, Your Honor, again, this is a particularly serious crime under the INA, and as this court has recognized. I'm not sure what you mean. I said is there a listing in the INA or elsewhere that says the following crimes are deemed to be serious crimes? Well, this court has said that crimes involving bodily harm is often considered a particularly serious crime. I know that's true, but what I'm getting at is you are, if I understand you correctly, you are reading out the language from Trent Teskew that says, most importantly, the type and circumstances of the crime indicate that the individual will be a danger to the community. And I don't see a shred of evidence, much less substantial evidence, that would support that. Well, Your Honor, again, the concept here is the discretionary, the ultimate discretionary decision of the board where they are balancing those factors, the nature of the conviction, certainly. My recollection is the board just mentioned it in virtually passing here. There was no consideration whether this was actually the nature and circumstances of this crime, which renders her a dead, suggests or supports the proposition that she's a danger to the community. Well, the immigration judge has considered the first three factors and also considered that, you know, the two people who were injured were her familiar members as part of his weighing of the factors when it came to danger to the community. Well, it would seem to me, just as a matter of common sense, if they were strangers, it would be more likely than if they were members of a family and this was an isolated, an aberrant act within the context of a domestic dispute. But, Your Honor, I understand your point. I don't, I won't. Well, I'm a little confused by this final question because at page AR3, which is the second page of the board's decision, there's an entire paragraph devoted to the particularly serious crime determination where the board essentially recounts the Francescu factors and then says we find no reason to disturb the IJ's determination that these factors, such as the nature of the respondent's crime, the circumstances, and underlying facts of the offense, the sentence imposed, and the fact that the offense involved multiple victims who were family members and who were, in fact, injured, show the respondent's crime was a particularly serious one, and then they cite to our advanced circuit decision in Alphonsus v. Holder where we also discuss those factors in a PSC determination. So I guess my question for you, Counsel, is what more does the IJ have to do in order to declare that the petitioner's conviction warrants a danger to the community finding? What additional analysis? I mean, Your Honor, as I stated before, I mean, this court has acknowledged that looking at all of those factors can be considered as part of a danger of community. So our position would be the immigration judge or, as you quoted, the board's language, they don't have to do more. They considered all of these circumstances, and they found that she was a dangerous community. So your position basically is that the danger to the community component is a discretionary call which is informed by consideration of all of the factors that went into the particularly serious crime determination. Well, that's, you know, as this court has stated in the court's review, the idea is that, I'm sorry, I shouldn't say idea, but the standard is essentially looking at whether the agency has looked at the evidence and the proper factors. And on its face, that is what the board immigration judge has done here. They looked at the factors. They looked at the evidence. They balanced the weight of the evidence, and they concluded that it was a particularly serious crime. Could I ask you one more question about mediation? Sometimes, and I could be wrong because I don't sit here as often as my colleagues, but sometimes mediation is a vehicle for the attorney general to exercise his discretion in a case where arguably he might prevail not to seek or to grant, for example, withholding of removal. And my reading of all of the facts in this case, particularly with regard to this woman, would suggest that this might be a case where mediation might be the vehicle for an exercise of the attorney general's discretion to say this is not a case where we want to press it. Your Honor, certainly mediation is something where we would consider that. But, again, I would not state that I am unopposed to mediation because I always hear petitioners out just as a discretionary matter, as counsel for the respondent regarding that. But in this particular case, I'm not sure it would go anywhere, but I'm always willing to hear out the petitioner. What if we did this? What if we held our decision for 60 or 90 days, hooked you up with the Ninth Circuit's mediators to see if maybe you could find some common ground? And if at the end of that period the mediation does not appear to be going anywhere, we could put a requirement in that you let us know that mediation efforts have failed and then we'll issue our decision. Would the government be willing to do that? I would have no objection to that. Okay. Can I just ask? I have one other question looking at the IJ and BIA discussion of the factors. So neither of them talked about how the incident started with the punch in the bloody nose. Is that disputed? I thought it was undisputed that it started that way. It's in the police report and it's undisputed. And so why isn't it required to consider that at least as a circumstance? The immigration judge did state he considered the testimony. It's not ‑‑ unfortunately he doesn't mention all of the testimony that he considered, but I think if your Honor looks at the transcript and the questioning of the immigration judge, the questioning by the DHS, they extensively covered the incidents that happened, the petitioner's relation of events, the differences between the petitioner's testimony, and primarily I believe that what was being disputed was her brother's testimony because his brother, her brother's relation of events in the police report as the petitioner was saying that her brother would change his story. So I acknowledge that there are some things that were undisputed that were perhaps not discussed in the immigration judge's decision directly, but the immigration judge certainly stated he considered the testimony in detail. And looking at the transcript, it's undeniable that the immigration judge extensively took testimony regarding the petitioner's relation of what occurred. Counsel, what's puzzling to me is that my understanding of California domestic violence law is that the police are obligated to arrest the primary aggressor who started the fight. And I don't think there's any question on this record that the boyfriend was the one who threw the first punch. I'm at a loss to understand why the Fontana police did not arrest him for that, even if they also decided to charge your client with the felony assault. Do you have any explanation from the record as to why they didn't do that? Your Honor, I would be speculating. The record is as it is presented. So your answer is no? You don't know? No. Okay. All right. Any other questions? Okay, thank you, Counsel. We've taken you way over your time. We appreciate your argument. I think we'd better add to your extra time for rebuttal because we've added so much time for the government. So let's do five minutes for rebuttal. Good morning, Your Honors. Patrick Valdes appearing on behalf of the petitioners. I may touch on a couple of things that were mentioned by opposing counsel. One, this is not a crime that is an aggravated felony. It may be a crime of violence, but in order for it to be an aggravated felony, the petitioner had to have been sentenced to a year or longer, and that's not the case. In terms of how productive a mediation would be, there's a waiver that would be available if this is deemed to be a crime involving moral turpitude, and that would require an analysis of that. Sometimes some crimes on the surface that appear to be turpitudinous actually are not. And to answer the judge's question of whether or not there's a particular crime that's always a crime that's particularly serious, an aggravated felony is always particularly serious. This falls well outside that classification. In terms of, well, how can I put this handily? The immigration court is a unique place. I wonder whether or not this police report would have even been admitted under the federal rules of evidence. Well, it's not uncommon, though, counsel, in my experience, that superior courts enter guilty pleas, or accept guilty pleas, all the time on the basis of the police report, which is stipulated by both the prosecution and the defense to be an accurate recital of what happened. My question is that there was no question of fact answered in the underlying state court proceedings. Your Honor, your question as to whether or not the original aggressor wasn't arrested, that's a big question that was never answered, not only in the state court proceedings, but forever. So there's nothing in the record that would help me answer that question? Nothing. And that is the essence of our arguments. This is an analysis, an in-depth analysis of the facts that was never conducted by this immigration court. But the problem is the nature of the injuries that your client inflicted with broken glass on her brother and the boyfriend. And I guess you could concoct a self-defense claim with regard to the ex-partner, but if the evidence was that she also stabbed or cut her brother, I'm having a hard time understanding how a self-defense claim could be made as to that charge. I mean, I think what should have happened here is that everybody should have gone to jail. But for whatever reason, they decided only to prosecute your client. If somebody's beating you in the face, is there a rulebook you're supposed to follow? I mean, she was defending herself. Glass was broken. People got cut. But she entered into a little plea and essentially said, I acknowledge that if this case goes to trial, I'm likely to be convicted. Did she? Or is there going to be assistance? Well, there may very well have been an effective assistance, but we don't litigate that in an immigration case, or at least not in this circumstance. I just think under the circumstances, we're dealing with an indigent immigrant who is marginalized in these proceedings and before any court, and there has to be some sort of safeguards to protect this woman's rights. Clearly, she was hospitalized. She was rendered unconscious. I'm very empathetic to the situation. I'm trying to figure out if there's some way we can address all this. Can you go back to the question on mediation? How do you respond to the government's statement that mediation is unlikely to be successful because she's not going to be eligible for any form of relief? I flatly disagree with that. Okay. What relief do you think she's going to get? If she marries her partner and she's eligible to immigrate to the United States through a marriage, there are waivers in the worst-case scenario. This is deemed a crime involving moral turpitude. In the worst-case scenario, there will be waivers that are available. I'm not at all conceding that this is a crime involving moral turpitude and an aggravated felony as a closing charge. We use this as not a basis of inadmissibility to the United States. If she didn't go to mediation on that point, wouldn't she have to move to reopen? There's actually a waiver for a removal order as well. Oh, is it? It's available stateside as well. Okay. If she has to immigrate from abroad, two waivers can be processed stateside. A family-based petition can be lodged with the government, and she would leave and then come back with her permanent residency with decisions saying that those applications would be provisionally approved. Was she represented by the public defender in the plea? My understanding, she was. And it's way too late to try to have an ineffective assistance of counsel claim about that? Absolutely not. Not too late? Not too late at all. So could she get the conviction vacated potentially? Absolutely. Is there any effort now up front or no? If this young woman wants to come to one of our offices and hire us, I'd be more than happy to pursue it. Okay. There are avenues of relief for this lady, even with this conviction. And in terms of the analysis of the facts, it didn't go to the judge. The judge did not go deep enough to really weigh the factors involved. Even this court's acknowledged it. It's like, you know, why wasn't everybody arrested? The facts here, as represented by the police, are specious. And that needed to be addressed. Specious in what way? I mean, I'm having a problem with the fact that we've got a lot of blood in this case. I mean, there were a lot of people hurt here, including your client. That's true. I mean, so what's specious about that? I mean, we've got a 245 conviction that, as far as I can see at the moment, looks to be supported by the evidence. I'm not sure that it is, though. The investigating officers didn't arrest everybody. They only arrested what appears to be the victim. I mean, I do recognize they have some discretion under California law, but I always thought that if they make the determination that he was the primary aggressor, then the statute mandates an arrest. Agreed, Your Honor, and that didn't happen. And it didn't happen. And that would be suspect to any trier of fact. You know, inquiries needed to be made by this immigration judge, and the facts needed to be weighted, and if there's ever an instance where the witnesses, it was incumbent on the government attorney who's presenting this police report, if there's ever an instance where he needed to make an effort to at least try to corroborate what was represented in that report, it's this case. Oh, can you answer the question as to what case would support retroactivity? I looked it up in haste. Nunez-Reyes v. Holder. I'm sorry, Nunez-Reyes. Nunez-Reyes v. Holder. Default principle is always favors retroactivity. Okay. I'll take a look at it. Did I answer the case? Yes, I did. 646 F3rd Division, 684. 646 F3rd, 634. Yes, Your Honor. Okay. Thank you. One issue that wasn't touched on was that the immigration judge failed to explain the need for the petitioner to provide corroborating evidence to support her application for detention under the Convention Against Torture, and that's a statutory requirement. I think I better cut you off. We have your briefs, and we're over, and there wasn't an issue that was raised before, so let's cut you off now. Thank you, both sides, for the very helpful arguments in this case. Thank you. Thank you, Your Honor.
judges: TALLMAN, FRIEDLAND, Korman